Good morning. Good morning, Your Honors. May it please the Court, Nadine Makada for the Petitioner, Jose Luis Hernandez. Your Honors, this Court, excuse me, this case boils down to one legal issue, and that is fault. Whose fault is it that the key piece of medical evidence regarding Christian Hernandez's serious medical conditions was not presented? Is it the fault of Christian's parents, who, despite their primary level rural Mexican education, managed to save up and pay thousands of dollars to two licensed attorneys, Walter Pineda and Charles Debly, both of whom failed to present this evidence? Or is it the fault of the two licensed attorneys in this matter? One attorney, Walter Pineda, filed what may best be referred to as a bunco asylum application, started the case off knowing that there's only two evidentiary requirements. You have to prove that they've been here for a requisite amount of time, being 10 years, and you have to prove hardship, exceptional and unusual hardship. Normally in these type of cases, as I tell my clients, this is the law of sick kids or special education kids. That's it. You have to prove that you have sick kids that require medical care that's not obtainable in Mexico or special education that's not obtainable in Mexico. There's only two evidentiary requirements. Mr. Pineda shows up in court himself, for once, presents the evidence of time, well-documented, fails to present anything regarding the medical requirements. All he presented was the testimony of the male respondent, the immigration judge in this matter, who, despite his reputation as a conservative immigration judge, leaves the door open for Mr. Pineda, stating on page 5 of his decision, there was no medical documentary evidence or expert testimony offered. On the next page, he states, if an upcoming checkup discovers a condition that is more serious and more definitive, then the respondent may wish to file a motion to reopen with this Court. But that's just it, isn't it? A follow-up doctor visit found that the young man was in better condition, that there wasn't a problem. Not no. That's he didn't no. The follow-up condition found that at that moment, he was not suffering. No, that's not true. He was not symptomatic at that moment. Not symptomatic right at that moment. Right then and thereafter, he was diagnosed with four conditions, including chronic abdominal pain, delayed puberty, retractile testes, and obesity. Okay? This is all within that time. Now, turning to Attorney No. 2, Charles Stebley, who was hired in late September 2003, another licensed attorney who they paid thousands of dollars to, he files an appeal. The primary argument that Mr. Stebley, or Attorney Stebley, made on the appeal was that the immigration judge should have continued the hearing to present the evidence. I disagree with that. The immigration judge did not have an obligation to continue the hearing. Mr. Panetta started the hearing knowing the evidentiary requirements, started the case. You should have your evidence lined up before you start a case. At the very least, when you have two years between the time of the master calendar and the final hearing, you should line up the evidence during that time. But the fact remains, Mr. Stebley, from the time that he took this case, which was in September 2003 until January 2006, knowingly making the argument that this evidence was not presented, himself never presented the evidence. That is the key in this case. If you're arguing to the court that, hey, Attorney No. 1 did not present the evidence and the court should have continued it, the hearing for him to present the evidence, then in the three years or almost three years that you have the case, why don't you present the evidence? Alito, Mr. Panetta at least asked for a continuance or suggested that a continuance would be needed to present additional medical evidence, correct? That is correct. All right. That is correct. He did make that, but so you're saying that because Stebley was aware of that and then did not follow up and present the medical evidence back to you. Exactly. I mean, at some point, what is the role of the attorney? An attorney's role is to present evidence. If you have a case for two and a half years and you're arguing that the court should have continued the case to present the evidence, present the evidence. Your Honors, that's all I did. When I took over this case, Attorney No. 3, I presented the evidence. I filed a motion to reopen for ineffective assistance of counsel against Mr. Stebley, and I presented the evidence. I argued that the statute, or the 90-day statute should be told, it could be told, because Mr. Stebley failed to perform his obligations as the attorney of record at that time. And that's as simple as this case boils down to. At the time of the immigration hearing, didn't the father, Jose, testify? Yes, he did. And he said that Christian was now, did not have any problems, and that Alan's last visit with the doctor said there was no asthma. So that was the evidence before the immigration judge at the time. And so the immigration judge would be justified in relying on that, wouldn't he? Excuse me, Your Honor? I didn't hear the last word you said. The immigration judge would be justified in relying on that. And that's the only evidence that was presented. I agree. And actually, the father testified that the child had some problem with his testicles. Okay? He did testify that there was some ongoing problem, but he didn't – that's as much as he could testify to. And I do agree with you, Your Honor. I don't – I'm not faulting the immigration judge in this matter. I mean, I'm faulting Mr. Panetta. If you open up a case which has two types of evidential requirements, time and hardship, and you are – and you open up the case, and then you appear at a master calendar, and then you know about the hearing, and you still show up without the evidence, that is – and then the immigration judge doesn't want to give you a continuance, that's – there's no problem with that. The immigration judge has a right to do that. Isn't there some indication, though, that there was a real effort to obtain that, but that he couldn't obtain it? Unusual, Panetta, that he was really trying to get the information and couldn't do it. Well, yes. If you try to obtain the evidence a week before the hearing and you can't get it, you are making, you know, even a valiant effort, but the fact remains, what was going on in the two years that you've had the case? And I have no doubt, Mr. Panetta, I'm sure the day before and two days before the hearing, he had his staff scrambling to try to get some evidence. But that's not the job of the lawyer, to wait until the last second and then not get the evidence. When you have two years to prepare it – when you start a case, you should have your evidence in order, first of all. So right there when you file the case, there was no reason – he didn't have to file the asylum application then. He could have waited six months, a year, two years, four years, five years, ten years, whatever. There was no need to file the asylum application at the time. And what any competent – any attorney in this room, any competent attorney would do is, before you file the case, you make sure you have the evidence. And then, arguably, even if you don't, then when you have notice, you show up at the first master calendar and the judge doesn't set you for a final hearing until way in the future, that gives you all this more time to produce this evidence and you still don't do it. So I – like, once again, it's the immigration judge. I mean, he has to control his docket. He can't just continue cases for – for unprepared, incompetent attorneys indefinitely, because Mr. Panetta had about 20 percent of the cancellation calendar at that time. They would have been continuing cases indefinitely. Let me ask you this. One other part of the showing you should have made or were required to make is that the son's medical condition could not have been dealt with adequately in Mexico. Your Honor, that issue has come up a lot. I don't believe the law says that we have to prove that it's – that it can't be treated in Mexico. We have to prove it. Ginsburg-Massey, Jr. Well, it's part of – you know, but what is – then what does – what does extreme and unusual hardship mean? Martinez-Sanchez, Jr. Access. In this case, it's access. Ginsburg-Massey, Jr. Is that what the Board has said? Martinez-Sanchez, Jr. Well, the Board's really never said anything definitively. Ginsburg-Massey, Jr. Have we said that? Martinez-Sanchez, Jr. I don't think the – it's – you have this Court. If I remember, my case law has stated that Respondents do not need to prove that the care is not available in Mexico. That was an evidentiary requirement that the Board, through the – you know, from the previous government attorneys, was trying to advance that argument, that we had to prove that it was not available in Mexico. This Court specifically never said that, that that was an evidentiary requirement. So that is not an evidentiary requirement, that we have to prove that it's not available in Mexico, because we can't. Most medical care is available in Mexico. The question comes down to, is it available to the type of clients that we are representing? And it's not. So that's why it comes down to access. And – Kennedy, Jr. Was there a failure, was there not, to comply with Lozada? Martinez-Sanchez, Jr. Against Mr. Pineda?  I – no. Kennedy, Jr. Against the other fellow. Kennedy, Jr. Nobody complied with Lozada, did they? No, I – no, I – with – no, we did. With Mr. Stebley's – no, I – they provided an affidavit. We sent it to Mr. Stebley, who didn't respond, and we filed a complaint with the State Bar of California against Mr. Stebley. So there was full compliance with Lozada against Mr. Stebley. And then what happened is, then this case was remanded to look at ineffective assistance of counsel against Mr. Pineda. And to me, the Castillo-Perez and the Lopez cases apply here. There's a clear case of ineffective assistance of counsel here when you only need two pieces of evidence and one is not there. There's just – these people had no chance of ever winning their case because there's only two requirements. And if you go to court and you start a case and you don't have one of the requirements, you have no evidence, and the judge tells you you don't have evidence, the judge tells you to file a motion to reopen, and you still don't. What more is there? Let me ask you one last question. How old is the oldest son now? He is now – I think he's 19 – 18. Eighteen. Yes. So he's three years away from being able to petition for his parents. Yes, but they faced a 10-year bar problem, and they can't – there's no waiver of that for parents. So they would be facing a 10-year bar in Mexico. You mean if they're removed? Yes. Yes. That's called the two-year bar. Yes. waiver through children. Uh-huh. Thank you. We'll hear from the government now.  Yes, ma'am. representing the Attorney General of the United States. In this case, the Board of Immigration Appeals did not abuse its discretion in denying petitioners' motion to reopen because their due process rights were not violated and they were not prejudiced by the actions of their attorney, Walter Pineda. As the board pointed out, there have been no LAZADA – there has not been compliance with LAZADA against Mr. Pineda, and I do understand that Mr. Pineda has been disbarred, and so contacting him would be pointless. However, we don't have any sort of affidavit regarding the client-attorney relationship between Mr. Pineda and the petitioners, and we are not – it's not clear from this record what Mr. Pineda told them. But do you know why our court remanded this back to the board to consider ineffective assistance of counsel? The board affirmed – Did we just do it summarily, or did somebody make a motion, or – No. The government moved to remand to the board because the board affirmed without opinion the immigration judge's decision. So, I mean, was the government just concerned that it was Mr. Pineda, and therefore it should be remanded back to the board? Yes, because the board – Mr. Steadley did raise a summary, an effective assistance of counsel claim in his motion – I'm sorry, in his appeal to the board, which was not addressed by the board. And so this court remanded the unopposed motion back. So the board found that Mr. Steadley – when Mr. Steadley was representing the petitioners, he didn't take steps to comply with Lozada vis-a-vis Mr. Pineda? No, because at that time it was current counsel who was representing petitioners. Mr. Steadley did appeal the – the affirmance without opinion to this court, but then he withdrew in August 2005, and current counsel took over. It wasn't until May 2007 that the – that the case was remanded to the board. So it was current counsel who did not comply with Lozada. So was counsel just not being forthright with us when he said that there was – that they complained to the board – I mean, to the bar? He – no, that he was being forthright. They did comply with Lozada against Mr. Steadley. There's – there's been two tracks in this case following up through Mr. Pineda, in which point Mr. Steadley came in and did appeal to this court. When current counsel became counsel for petitioners, he amended the appeal for the board regarding the ineffective assistance of counsel of Mr. Steadley. The board – that decision is in the record as well, and the board denied that motion to reopen as well. That case was also petitioned for review to this court, but has been dismissed. And the current case before the court is solely regarding Mr. Pineda and his – and the allegations of ineffective assistance of counsel against him before the immigration judge. Breyer, what could it have done to do anything with respect to complying with Lozada? It just really seems kind of worthless. The fellow just left a mess. Well, because we don't know what – what the petitioners were told regarding submitting documentations of their son's medical problems. There is some documentation in the record regarding Christian's hernia operation, and then he did go to the doctor, I believe, the day before the hearing, and the evidence from Petitioner, the father, was that the doctor told him everything was okay and that he should continue to see the doctor if there were further problems. The other son had seen a doctor regarding asthma, but also had a follow-up appointment, and Mr. Pineda did file a motion to reopen with the immigration court regarding the asthma finding for his younger son. Also, there's no prejudice. Because the medical records for the older son were not available, counsel in his motion to reopen against Mr. Steadley, alleging ineffective assistance of counsel against him, argues that Christian's problem is new and was not available for the immigration judge, and that's on page 36 of the record. So we cannot hold that against Mr. Pineda if counsel later states that it was not available. And the doctor's appointments that we do have from the doctor regarding the chronic abdominal pain and the other problems comes in April 2006, which was after Mr. Steadley withdrew his counsel record. We don't have any records in between the immigration judge's decision and the motion to reopen before the board regarding Mr. Steadley to show that this problem had, in fact, occurred after the immigration judge's hearing. So there's no prejudice to petitioners because the hardship was not there. And so for those reasons, we argue that the case before this court against Mr. Pineda, ineffective assistance of counsel, cannot be shown. Regarding the – Is there anything that can be done to keep the family together? This court has stayed voluntary departure. And so because it has been in proceedings for so long. By my calculations, I actually thought that the oldest son was 19. Yeah. So two years away from petitioning. If petitioners do not overstay their voluntary departure, I believe this is correct, and they do return to Mexico, their son could petition for them in two years because they have to. And they're eligible for – assuming everything is in order. They timely departed and whatnot. Then they have a preference for the visa. They would be an immediate relative as parents. So, yes. Again, I can't make representations. No, I understand. I understand. But, yes. And so that is one option because the voluntary departure has been stayed from the initial case. If there are no more questions, I will submit this case. Judge Eck, question? Thank you, Your Honors. Go ahead. You have one minute. Can I just have one minute to promote? Just real quick. It doesn't matter whether they are in an involuntary departure period or not. If they have one year of unlawful presence after April 1, 1997, they're looking at a 10-year bar. They do have a 10-year bar, which is not waivable through a child. So, yes, they would show up in Mexico. They're petitionable as immediate relatives, but they are not eligible to return for 10 years under the 212 bar, the 212A bar. So, that is not true that they can come back in two years categorically. I haven't heard of the 212A bar, but then I don't practice this law every day. There is a 10-year bar. What's it called? What's the section? It goes under Section 212. And what does it say? It basically says if you have one year of unlawful per – it's the three – they call them the three and the 10-year bars. If you have zero to six months of unlawful presence, then there is no bar. If you have from six months to one year, then you have a three-year bar. And if you have one year plus of unlawful presence, then you have a 10-year bar. And that's not waivable? Not through a child. It's waivable through a spouse or a parent, but not through a child. It's called the consular processing waivers. We do them all the time. It's very, very common. But they're not waivable through a child. Otherwise, these can't – anytime with older kids on these cancellation cases, there would be no problem. Just stay here, and then, you know, you need to do the appeal process, and if you lose just when they turn 21, come right back. But that's not true. They don't get to come right back. Okay? Thank you. Okay. All right. Thank you.
judges: Watson, Hug, Paez